.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAURICE SMITH,

   Petitioner,        No. 2:04-cv-02358-MDS

 vs.           ORDER

T. SCHWARTZ, WARDEN, et al.,

   Respondents
_____/

   Pending before the court is Petitioner Maurice Smith's (Smith) application for a writ of habeas corpus (Petition). For the reasons noted below, Smith's Petition is DENIED.

I

   On July 11, 2003, a Sacramento Superior Court jury convicted Smith of: (1) possession of cocaine base for sale (Cal. Health & Safety Code § 11351.5); (2) transportation of cocaine base (Cal. Health & Safety Code § 11352(a)); and being a felon in possession of a firearm (Cal. Penal Code § 12022(a)(1)).  The jury also

found that Smith committed the drug offenses personally armed with a firearm (Cal. Penal Code § 12022(c)).

In his petition, Smith challenges (1) the sufficiency of the evidence to establish his possession of the firearm, and (2) the trial court's refusal to give the defense-requested instruction on after-acquired knowledge of the presence of the firearm. Petition at 4.

A

Smith filed a direct appeal of his conviction in the California Court of Appeal, Third Appellate District. In its decision affirming the judgment and sentence, the Court of Appeal summarized the relevant facts as follows:

> About 8:00 p.m. on March 5, 2002, defendant left a midtown apartment, got into the driver's seat of a sport utility vehicle (SUV), and drove off with first one and then several undercover narcotics task force officers in separate cars in pursuit. Defendant had been seen driving the SUV earlier that day. After following defendant for about 15 minutes, the officers activated their lights and sirens and stopped the SUV, observing a front seat passenger, Anthony Edwards, in the process. About 15 seconds passed between the officers' turning on the sirens, defendant's pulling over, and defendant's getting out of the SUV. The officers had not seen Edwards and defendant exchange any objects after activating their sirens and lights.
>
> A search of Edwards revealed only a crack cocaine smoking pipe in his pants pocket. A search of defendant revealed 5.71 grams of cocaine base in two sandwich baggies in his jacket pocket as well as $20.39. In the fanny pack defendant was wearing, officers found defendant's driver's license, social security card, credit cards, and thirty-six $1 bills, twenty-three $5 bills, twenty-nine $10 bills, forty-seven $20 bills, five $50 bills, six $100 bills, and 52 quarters, totaling $2,244. Officers found no drug paraphernalia on defendant or in the SUV.
>
> A search of the SUV revealed an Avis rental agreement for the SUV, signed by defendant, for the period of March 4, 2002, through March 7, 2002, and another rental agreement for another vehicle, signed by defendant, for the period of February 23, 2002, through March 2, 2002, both in the driver's side door pocket. The glove box contained nothing of evidentiary value. A cellular telephone was found on the passenger's seat. A hook used to attach the cell phone to a belt was found in defendant's fanny pack. A drug-sniffing dog showed interest in the closed center console/armrest between the front seats. An officer opened the console, lifted a tray inside, and found a loaded .38-caliber revolver underneath a towel. No fingerprints

were found on the rounds. Only one fingerprint was found on the gun, on the trigger guard, but it matched neither defendant nor Edwards.

An expert testified that the 5.71 grams of cocaine base contained between 28 and 57 doses for sale at $10 or $20 apiece at street level and that a firearm plays an important role in the sale of cocaine base at the street level. Based on the amount of cocaine base with no paraphernalia, the amount of cash and the variety of denominations, especially forty-seven $20 bills, and the loaded firearm, the expert opined that the cocaine base was possessed for sale at street level to midlevel.

Lodged Doc. 5 at 2–4.

B

On June 10, 2004, the California Court of Appeal affirmed Smith's judgment of conviction on his direct appeal. Lodged Doc. 5 at 1–2. On July 13, 2004, Smith sought review in the California Supreme Court. Lodged Doc. 6. The California Supreme Court denied Smith's petition for review on August 18, 2004. Lodged Doc. 7.

C

On November 3, 2004, Smith filed an application for a writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254. Petition at 1. Schwartz acknowledges that Smith has exhausted his state court remedies. Answer at 2.

II

A

This petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, a federal court has limited power to grant habeas corpus relief. AEDPA provides that

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision may result in a decision that is "contrary to" established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). The state court's decision may be "an unreasonable determination" if "the state court identifies the correct governing legal principle" but applies the principle unreasonably to the prisoner's factual situation. *Id.* at 413.

To determine whether the state court's decision was objectively unreasonable, this court looks to the last reasoned state court decision. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). State court decisions are subject to federal habeas relief only if they are unreasonable, more than merely erroneous. *Early v. Packer*, 537 U.S. 3, 11 (2002).

### B

Here, the California Court of Appeal addressed all of the claims Smith raises in his habeas petition, and rejected these claims in a reasoned opinion. *See* Lodged Doc. 5. The California Supreme Court rejected Smith's claims summarily. *See* Lodged Doc. 7. Therefore, this court analyzes the Court of Appeal's opinion for reasonableness.

## III
### A

Smith argues that the government's evidence was insufficient to support the jury's finding that he possessed the .38-caliber revolver, and did so in connection

4

with the drug offenses.

A reviewing court must defer to the jury verdict if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). If conflicting inferences are supported by the record, a court "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id*. at 326. On habeas review, to prevail on an insufficiency of the evidence claim, Smith must show that the Court of Appeal unreasonably applied the *Jackson* standard. *Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009).

1.

To prove possession of a firearm by a convicted felon, the government had to prove that Smith was a convicted felon, and knowingly exercised control over the firearm. Cal. Jury Instructions Crim. 12.44. There is no dispute that Smith was already a convicted felon at the time he was prosecuted in this case.

The Court of Appeal held that there was sufficient evidence from which a rational jury could find beyond a reasonable doubt that Smith knowingly exercised control over the firearm. The gun was found under a towel in the center console of the SUV Smith was driving. Smith had rented the SUV. The jury could have rationally inferred that Smith controlled the car, and what was inside it—especially what was inside the center console accessible from the driver's seat. Indeed, the only other person who might have possessed the gun, Edwards, was in the passenger's seat and had only a rock cocaine smoking pipe on his person. From the limited paraphernalia found on Edwards' person, the jury could rationally have believed, as the expert opined, that Edwards was a user and would have less reason to need a gun than Smith, who the jury found to be a dealer.

5

Further, it would be unreasonable to speculate that the gun was in the car at the time it was rented. Thus, the jury could have concluded beyond a reasonable doubt that Smith put the gun in the car at some point, and therefore knowingly possessed it.

Construing the evidence about the gun's location, which was within Smith's reach from the driver's seat of a vehicle Smith himself rented, in the light most favorable to the government, the Court of Appeal's determination that a rational jury could find that Smith knowingly exercised control over the gun was not unreasonable. Further, Smith points to no Supreme Court case that reaches the opposite result on materially indistinguishable facts.

Habeas relief is not warranted on this ground.

2.

To prove possession of a firearm in connection with the drug offenses, the government had to prove that Smith had knowledge of the firearm, and that he was "personally armed with [it] in the commission or attempted commission" of the drug offenses. *People v. Mendival*, 3 Cal. Rptr. 2d 566, 570 (Ct. App. 1992). To prove that Smith was personally armed required proof that the defendant carried the firearm, *or* that it was "available for offensive of defensive use." *Id.* at 574.

For the reasons just explained in Part III.A.1. *supra*, the Court of Appeal did not unreasonably determine that a jury could rationally have concluded based on the evidence presented that Smith knowingly possessed the gun.

The Court of Appeal further held that there was sufficient evidence from which a rational jury could find that Smith had the gun available for offensive or defense use in connection with drug distribution. The jury convicted Smith of transporting cocaine base, and accordingly must have concluded that Smith was using the SUV (the only vehicle involved) in connection with transporting the

drugs. The gun was found within Smith's comfortable reach in the console of that SUV after a drug-sniffing dog reacted to the console. Thus, a rational jury could easily have concluded beyond any reasonable doubt that the gun was readily available for offensive or defensive use in connection with the drug transportation activity conducted using the SUV.

Construing the evidence about the gun's location in the vehicle and Smith's drug activities related to the SUV in the light most favorable to the government, the Court of Appeal's determination that a rational jury could find that Smith possessed the gun in connection with the drug offenses was not unreasonable. Further, Smith points to no Supreme Court case that reaches the opposite result on materially indistinguishable facts.

Habeas relief is not warranted on this ground.

B

Smith claims that the trial court deprived him of his constitutional right to establish a defense by denying his request for an alternative jury instruction. Specifically, Smith argues that, assuming there was evidence supporting his knowledge that the revolver was in the console of the rented SUV, such evidence at most suggested he became aware of the gun's presence at some point prior to his arrest. Accordingly, he argues that due process required the trial court to give the following jury instruction:

> When an ex-felon comes into possession of a firearm without knowing that he has a firearm, and he later learns that he has a firearm, he does not automatically violate [California Penal Code § 12021(a)] upon acquiring knowledge of the firearm. The ex-felon violates the law only if it is proved that he intentionally retained possession of the weapon after learning of its presence and did not take reasonable steps to immediately relinquish possession of it.

Petition, Ex. A at 11.

"[A] defendant is entitled to an instruction as to any recognized defense for

7

which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). Further, on habeas review, even if there was some instructional error, "[t]he only question for us is whether the ailing instruction [or failure to give the instruction] by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks omitted); *Duckett v. Godinez*, 67 F.3d 734, 744 (9th Cir. 1995).

The Court of Appeal reasoned that Smith was not entitled to his preferred instruction because "there was no evidence that someone else placed the firearm in the console or that defendant immediately tried to relinquish possession." Lodged Doc. 5 at 11.

Although the trial court did not give Smith's requested special instruction, it did instruct the jury that the possession offense was a general intent crime requiring a union or joint operation of act or conduct and general criminal intent. *Cf. People v. Jeffers*, 49 Cal. Rptr. 2d 86, 89 (Ct. App. 1996) (holding failure to give above instruction reversible error because trial court also failed to give general intent instruction). Furthermore, Smith's theory of the case was that he was entirely unaware of the gun's presence, not that he came to possess it innocently and lacked a reasonable time to get rid of it once he discovered it was in the center console. In such circumstances, the refusal to give Smith's instruction on after-acquired knowledge was not error. The Court of Appeal's determination that there was no instructional error is not an unreasonable application of *Mathews*. Moreover, in light of the lack of evidentiary support for the instruction as well as the trial court's having given a correct set of instructions on the possession charge including a general intent instruction, the trial court's failure to give the requested instruction to the jury did not interfere with Smith's

due process rights. Smith points to no Supreme Court case that requires the opposite result.

Accordingly, this court cannot grant Smith's petition.

## Conclusion

It is hereby ordered that Smith's application for a writ of habeas corpus is DENIED. The Clerk is directed to enter judgment and close the case.

DATED: May 13, 2010

/s/ Milan D. Smith, Jr.
UNITED STATES CIRCUIT JUDGE
Sitting by Designation